(No. 47220.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FEDERAL TOOL AND PLASTICS, Division of V.C.A., Appellee.

*Opinion filed September 26, 1975.*

William J. Scott, Attorney General, of Springfield (George H. Klumpner, Assistant Attorney General, of counsel), for the People.

Perlman, Schulman and Bell, of Chicago (Errol Zavett, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the validity of the following statute:

"No employer shall advertise seeking to hire employees to replace employees on strike or locked out during any period when a strike or lockout is in progress, which strike or lockout has arisen out of a dispute between the management of the business and persons employed by such management at the time of such dispute who strike or are locked out as the result of failure in settling such dispute, unless it shall be stated in such advertisement that a strike or lockout is in progress at such place of business." (Ill. Rev. Stat. 1973, ch. 48, par. 2c.)

A complaint filed in the circuit court of Cook County charged the defendant, Federal Tool and Plastics, Division of V.C.A., with a violation of the statute, a petty offense punishable by a fine of not more than $300. Each day such advertising appears is deemed a separate offense. Ill. Rev. Stat. 1973, ch. 48, par. 2d.

The defendant moved to dismiss on the grounds that: (1) the complaint failed to state an offense; (2) the statute was preempted by Federal law; (3) the statute violated both State and Federal constitutional guarantees of free speech, due process and equal protection; and (4) the statute was selectively enforced. The trial court held that the complaint was not defective but that the statute was unconstitutional because it was preempted by Federal law; it did not, therefore, consider the third and fourth grounds advanced by the defendant.

The State has appealed directly pursuant to Rule 603 (50 Ill.2d R. 603). It challenges the trial court's determination that the statute is preempted. The defendant rebuts

that argument and in addition renews its contention that the statute violates both the State and Federal constitutional guarantees of free speech and equal protection. Because of our disposition of the preemption question, we do not reach the free speech and equal protection issues.

The parties agree that the starting point in the analysis of any labor law preemption question is the rule established in *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773. Although the rule in *Garmon* has been the subject of much criticism, it was reaffirmed in *Amalgamated Association of Street Employees v. Lockridge* (1971), 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909, and remains the law today. (See, *e.g.,* Bryson, *A Matter of Wooden Logic: Labor Law Preemption and Individual Rights,* 51 Tex. L. Rev. 1037 (1973); Lesnick, *Preemption Reconsidered: The Apparent Reaffirmation of Garmon,* 72 Colum. L. Rev. 469 (1972).) In *Garmon,* the court stated:

> "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by section 7 of the National Labor Relations Act [29 U.S.C. sec. 157], or constitute an unfair labor practice under section 8 [29 U.S.C. sec. 158], due regard for the federal enactment requires that state jurisdiction must yield. ***
>
> At times it has not been clear whether the particular activity regulated by the States was governed by section 7 or section 8 or was, perhaps, outside both these sections. ***
>
> *** When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (359 U.S. 236, 244-45, 3 L. Ed. 2d 775, 782-83.)

Section 7 of the National Labor Relations Act (NLRA) (29 U.S.C. sec. 157) covers labor activities which are protected against employer interference, and section 8 (29 U.S.C. sec. 158) covers prohibited employer and employee unfair labor practices. We believe it is unnecessary to decide whether the activity regulated by the statute before us is arguably subject to section 7 or to section 8 of the NLRA because we believe the statute is preempted even if the activity is neither protected nor prohibited.

In *Teamsters Local No. 20 v. Morton* (1964), 377 U.S. 252, 12 L. Ed. 2d 280, 84 S. Ct. 1253, the Supreme Court held that a State law may be preempted even though it involves an activity not arguably protected or prohibited by section 7 or section 8. In *Morton,* a union persuaded the management of one of a struck employer's customers to refrain from doing business with the employer during a strike. The Federal district court held that this form of secondary pressure was a permissible activity under Federal law but that the activity violated the common law of Ohio which prohibited " 'making direct appeals to a struck employer's customers or suppliers to stop doing business with the struck employer.' " (377 U.S. 252, 255, 12 L. Ed. 2d 280, 283.) The Supreme Court agreed that this activity was not within the *Garmon* rule and that the activity was permissible under Federal law. Congress had, in fact, considered whether soliciting the support of a customer should be prohibited and had declined to so prohibit solicitation. (377 U.S. 252, 258, 259, 12 L. Ed. 2d 280, 285, 286.) The court stated that the resolution of the preemption question "ultimately depends upon whether the application of state law in this kind of case would operate to frustrate the purpose of the federal legislation." (377 U.S. 252, 258, 12 L. Ed. 2d 280, 285.) The court held that the Ohio common law was preempted by Federal labor law, stating:

> "In this case, the petitioner's request to Launder's management to cease doing business

with the respondent was not proscribed by the Act. '[A] union is free to approach an employer to persuade him to engage in a boycott, so long as it refrains from the specifically prohibited means of coercion through inducement of employees.' *Carpenters Local 1976 v. Labor Board, supra,* 357 U.S. at 99, 2 L. Ed. 2d at 1193. This weapon of self-help, permitted by federal law, formed an integral part of the petitioner's effort to achieve its bargaining goals during negotiations with the respondent. Allowing its use is a part of the balance struck by Congress between the conflicting interests of the union, the employees, the employer and the community. *Electrical Workers Local 761 v. Labor Board,* 366 U.S. 667, 672, 6 L. Ed. 2d 592, 596, 81 S. Ct. 1285. If the Ohio law of secondary boycott can be applied to proscribe the same type of conduct which Congress focused upon but did not proscribe when it enacted section 303, the inevitable result would be to frustrate the congressional determination to leave this weapon of self-help available, and to upset the balance of power between labor and management expressed in our national labor policy. 'For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits.' *Garner v. Teamsters Union,* 346 U.S. 485, 500, 98 L. Ed. 228, 244, 74 S. Ct. 161. We hold, therefore, that the damages awarded against the petitioner based upon its peaceful persuasion of Launder's management not to do business with the respondent during the strike cannot stand." 377 U.S. 252, 259, 260, 12 L. Ed. 2d 280, 286.

The question in the present case is not free from

doubt. The General Assembly may have designed the statute to avoid violence and to protect public peace and order. It may have considered that one who fails to disclose the fact that a strike is in progress when advertising for new employees violates the principle that should govern "truth in advertising." It could also have determined that the crossing of the picket line by newly employed strike breakers might not only be the cause of violence, but might subject those persons, their children and their families to abuse and obloquy. These considerations could be regarded as justifying the enactment of the present statute; 18 other States have statutes virtually identical to the statute in question here. See CCH-Labor L. State Rptr. par. 40,358.

Nevertheless, we believe that the reasoning of the *Morton* case requires us to hold that the statute has been preempted by Federal labor law. An employer has a right to hire replacements for striking employees (*NLRB v. Mackay Radio & Telegraph Co.* (1937), 304 U.S. 333, 82 L. Ed. 1381, 58 S. Ct. 904; *H & E Binch Co. Plant of Native Laces v. NLRB* (2d Cir. 1972), 456 F.2d 357), and that right constitutes an important economic weapon left to the employer by Congress when it struck the balance of power between labor and management. The statute requires that notice that a strike is in progress be included in any advertisement for employees, and thus encumbers the employer's right to hire employees with a requirement that he publicize the existence of the strike. This requirement, enforceable by a criminal sanction, impairs the balance struck by Congress.

The Congress has specifically considered whether prospective employees should be informed that a strike is in progress. The Wagner-Peyser Act (29 U.S.C. secs. 49-49k), which was enacted to promote and develop a national system of employment agencies, provides that in carrying out the provisions of the Act, the Secretary of Labor is "authorized and directed to provide for the giving

of notice of strikes or lockouts to applicants before they are referred to employment." (29 U.S.C. sec. 49j.) The Congress did not, however, impose a requirement that an employer include notice of a strike in an advertisement for replacement employees.

We believe that Professor Archibald Cox has accurately described the preemption test which is emerging from *Morton*. He stated:

> "*** Congress obviously had its own views concerning the special rights and duties to be imposed upon employers, unions, and employees because of their relation to employee self-organization and free collective bargaining. Where further particularization would be appropriate, it delegated the function to a specially constituted administrative agency. But it is equally plain that Congress developed this special framework for self-organization and collective bargaining within a larger context of state law creating rights of property, bodily security, and personality, preserving public order, and promoting public health and welfare. These laws apply to the general public or substantial segments thereof without regard to whether the individual is an employer, union, or employee concerned with unionization or a labor dispute. Neither the laws themselves nor any particular application involves weighing the special interests of employers, unions, employees, or the public in employee self-organization, collective bargaining, or labor disputes. The likelihood that the collateral impact of such laws upon management or labor will upset the national balance is small enough to permit their operation unless interference with a specific federal right can be affirmatively demonstrated. It is only where the state law or rule of decision is based upon an accommodation of the special interests

of employers, unions, employees, or the public in employee self-organization, collective bargaining, or labor disputes that the likelihood that its application to persons under NLRB jurisdiction will upset the balance struck by Congress is so great as to require exclusion of state law unless Congress has provided otherwise." Cox, *Labor Law Preemption Revisited*, 85 Harv. L. Rev. 1337, 1355-56 (1972).

The statute before us impinges "on the area of labor combat designed to be free." (377 U.S. 252, 260, 12 L. Ed. 2d 280, 286.) It is not applicable to the general public, and it is operative only during an acute labor dispute. Although it was probably motivated by a desire to protect prospective employees from unwittingly becoming involved in a potentially hostile situation, the statute nevertheless upsets the balance of power struck by Congress. The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*