704 F.2d 935
 114 L.R.R.M. (BNA) 2957, 96 Lab.Cas. P 14,194
 PEOPLE OF the STATE OF ILLINOIS ex rel. John A. BARRA,
State's Attorney of Peoria County, Illinois,
Plaintiff-Appellant,
v.
ARCHER DANIELS MIDLAND COMPANY, Defendant-Appellee.
National Labor Relations Board, Intervenor-Appellee.
 No. 82-2187.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 21, 1983.
Decided April 4, 1983.
 
 Patricia Rosen, Asst. Atty. Gen., Civil Appeals Div., Chicago, Ill., for plaintiff-appellant.
 Roy G. Davis, Davis & Morgan, Peoria, Ill., for defendant-appellee.
 David R. Marshall, Washington, D.C., for N.L.R.B.
 Before PELL, POSNER, and COFFEY, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 In 1980 Archer Daniels Midland Company began hiring building contractors to work on the renovation of a plant that it owned in Peoria, Illinois. At first it hired just contractors who employed only union labor, but in December 1981 it awarded a contract to a nonunion contractor. Two months later the union representing the employees of a competing contractor who had wanted the job threw up a picket line at the plant. None of the employees of the union contractors working at the plant would cross the picket line, so Archer Daniels Midland hired nonunion contractors to take their place.
 
 
 2
 On March 18, 1982, the State's Attorney of Peoria County filed a suit in state court, in the name of the State of Illinois, against Archer Daniels Midland. The complaint alleged that one of the nonunion contractors, Payne & Keller, Inc., "are [?] reputed to be [employ?] 'strikebreakers' as defined in" the Illinois Strikebreakers Act, Ill.Rev.Stat.1981, ch. 48, p 2e-h. Passed in 1975 but never the subject of a reported case, the Act makes it a misdemeanor "knowingly [to] employ any professional strikebreaker in the place of any employee during any period when a lockout or strike is in progress." p 2f. A professional strikebreaker is defined as "any person who repeatedly and habitually offers himself for employment on a temporary basis" to replace a worker who has stopped working because of a strike (defined in p 2e(d) to include picketing that causes anyone not to perform any services) or a lockout. p 2e(c). The complaint alleged that acts of violence at the plant since the picketing had begun had required deploying "substantial members [numbers?] of the City of Peoria Police Department to preserve order, protect property and prevent bodily injury," but it did not say who had committed those acts. The complaint further alleged that union officers had requested the State's Attorney to bring criminal charges against Archer Daniels Midland under the Illinois Strikebreakers Act but that "substantial doubt exists whether [the Act] is preempted by" sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. Secs. 157, 158--in which event it would be invalid under the supremacy clause. The complaint requested the court, pursuant to Illinois' declaratory judgment procedure, Ill.Rev.Stat.1981, ch. 110, p 2-701, to "enter an Order determining whether [the Illinois Act] has been and is preempted by Federal law."
 
 
 3
 Archer Daniels Midland removed the case to federal district court. Rather than petition to remand the case to state court, the State's Attorney filed an amended complaint in federal court. The amended complaint is virtually identical to the original one except that it adds an allegation that the State's Attorney "will and is prepared to file [criminal] charges against Archer Daniels Midland." In its answer, Archer Daniels Midland denied that the Illinois Strikebreakers Act was applicable to the events at its Peoria plant, since the alleged "professional strikebreakers" were not its employees but employees of an independent contractor whom it had hired for the job.
 
 
 4
 Archer Daniels Midland moved for summary judgment dismissing the State's Attorney's complaint and the district judge granted the motion. He refused to decide whether the Act was applicable to the events at Peoria; this question, he ruled, involved genuine issues of material fact and therefore could not be decided on a motion for summary judgment. See Fed.R.Civ.P. 56(c). But he held that the Act was indeed preempted by the federal labor laws, thus reaching the same conclusion as has been reached in every other decision cited to us on the validity of state laws limiting an employer's right to hire replacement workers in labor disputes covered by federal law. See Illinois v. Federal Tool & Plastics, 62 Ill.2d 549, 344 N.E.2d 1 (1975); U.S. Chamber of Commerce v. New Jersey, 89 N.J. 131, 445 A.2d 353 (1982); Alton Box Board Co. v. City of Alton, 77 L.R.R.M. 2123 (S.D.Ill.1971). He entered a declaration to that effect as his final judgment in the case, and the state appeals.
 
 
 5
 One of the amici curiae argues that we have no subject-matter jurisdiction. Its argument is as follows. A case is removable from state to federal court only (with immaterial exceptions) if the plaintiff could have brought his suit in federal court in the first place, 28 U.S.C. Sec. 1441, and the state could have done that here only if its claim arose under a federal statute or the Constitution, 28 U.S.C. Sec. 1331. It did not; it arose under the Illinois Strikebreakers Act and therefore could not have been brought in federal court originally and therefore was not removable.
 
 
 6
 The argument overlooks the fact that after the case was removed, the state--apparently content to litigate in federal court the suit it had brought in state court--filed an amended complaint. If that complaint properly invoked the jurisdiction of the federal court it is immaterial that the original complaint may not have stated a removable claim. Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702-03, 92 S.Ct. 1344, 1347-48, 31 L.Ed.2d 612 (1972); Stone v. Stone, 632 F.2d 740, 742 (9th Cir.1980). But the argument can easily be refashioned: the amended complaint is not within the jurisdiction of the federal court because the claim it states arises under the Illinois Strikebreakers Act rather than under federal law.
 
 
 7
 The argument would be unanswerable, at least until the Supreme Court decides Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for So. Calif., 679 F.2d 1307 (9th Cir.1982), cert. granted, --- U.S. ----, 103 S.Ct. 567, 74 L.Ed.2d 930 (1982), if the complaint did not request a declaration of rights under federal law. In this circuit, at least, it is beyond argument that a claim for an injunction based on state law does not arise under federal law merely because the claim may be preempted by federal law. Illinois v. Kerr-McGee Chem. Corp., 677 F.2d 571 (7th Cir.1982); People of the State of Illinois v. General Elec. Co., 683 F.2d 206, 208 (7th Cir.1982). But the state did not ask for an injunction here; it asked for a declaration that it could proceed with its plans without violating federal law. So we must consider whether a suit under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, is a proper vehicle for determining whether a state law claim has been preempted by federal law. (It is immaterial that the amended complaint does not mention the Declaratory Judgment Act but instead asks for a declaratory judgment under the Illinois Civil Practice Act, which is inapplicable to suits in federal court. A properly removed case can be litigated in federal court without the filing of an amended complaint changing procedural references from state to federal law.)
 
 
 8
 The proposition that a suit can be maintained in federal rather than state court only by virtue of the Declaratory Judgment Act may seem to contradict the statement found in many decisions, notably Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950), that the Act "did not extend the [federal courts'] jurisdiction." But the statement cannot have been intended literally. The Act accomplished nothing if it did not allow some suits to be brought in federal court that could not have been brought there previously, see Borchard, Declaratory Judgments 232-33 (2d ed. 1941)--suits that otherwise would have been brought, if at all, in state court. A notable example is a patent infringer's suit for a declaration that the patent is invalid. See Hanes Corp. v. Millard, 531 F.2d 585, 592 (D.C.Cir.1976); Sticker Industrial Supply Corp. v. Blaw-Knox Co., 367 F.2d 744, 746-47 (7th Cir.1966); E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir.1937); 10A Wright, Miller & Kane, Federal Practice and Procedure Sec. 2767 at pp. 739-40 (1983). A patentee spreads the word that some firm is making an infringing product. Sales of the firm's product dry up because customers fear being sued for infringement. But the patentee does not sue--maybe because of well-founded doubts of the patent's validity--instead allowing threats and rumor to discourage the infringer. Although he has no federal claim, the infringer can bring a federal declaratory judgment action against the patentee, seeking a declaration that the patent is invalid. The Declaratory Judgment Act thus enables a potential defendant in a suit by the patentee that may never be brought to precipitate that lawsuit. If it were not for the Act the infringer's only remedy would be a suit for unfair competition under the Lanham Act or, more probably, under state law; and if the suit were based on state law alone it could not be brought in federal court under 28 U.S.C. Sec. 1331.
 
 
 9
 The principle of the patent cases has been used to sustain federal jurisdiction of nonpatent declaratory judgment actions, notably in Serio v. Liss, 300 F.2d 386, 389 (3d Cir.1961), and in our recent decision in State of Wisconsin v. Baker, 698 F.2d 1323, 1329-30 (7th Cir.1983). In Baker, the members of an Indian tribe claimed the right under treaty--a federal right--to restrict nonmembers' access to navigable waters within its reservation, and had promulgated penalties for violating the restrictions. The State of Wisconsin brought a suit in state court on behalf of its citizens, asking among other things for a declaration that the Indians had no right under the treaty to restrict access to navigable waters. This court held that the declaratory count in the suit had been properly removed to federal court. The analogy to the patent cases is plain. If an outsider used the navigable waters the tribe might sue him on the basis of its supposed treaty right. But then again it might not. It might rely on the cloud that its claim cast over outsiders' rights to keep their use of the waters to a low level--to prevent any sustained and effective exploitation--much as a patentee might use the threat of enforcement to inhibit investment and sale by infringing producers. Since the Declaratory Judgment Act therefore would have allowed the State of Wisconsin, by suing the tribe in federal court, to precipitate the tribe's suit to enforce its federal treaty rights, the state's declaratory judgment action in state court was within the original jurisdiction of the federal courts and was therefore removable under 28 U.S.C. Sec. 1441.
 
 
 10
 However, Baker and the patent cases do not support jurisdiction in this case, because an essential feature of those cases is missing here: a good reason for allowing the state law claimant to precipitate a lawsuit by the federal claimant. The fact that the declaratory judgment defendant, Archer Daniels Midland, may have a federal right to hire what the State's Attorney of Peoria County calls "professional strikebreakers" does not cast a blight over any current or planned activities of the declaratory judgment plaintiff. The State's Attorney is free to go about his business without worrying that he may be sued. He need not even fear that if he brings criminal proceedings against Archer Daniels Midland he will be slapped with an injunction suit. The doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), has been interpreted to prevent the defendant in a criminal action from maintaining such a suit even if he brings it before the prosecutor gets around to bringing the criminal action. It is not the order of the suits that is important but whether a state statute has been violated; if so, and the state prosecutes, the violator can challenge its constitutionality only by way of defense to the criminal proceeding. People of the State of Illinois v. General Elec. Co., supra, 683 F.2d at 212. Archer Daniels Midland's alleged violation is in the past and maybe the present, not just in the future, so if it is prosecuted it will not be able to enjoin the prosecution by suing on its federal right in federal court. Moreover, the state did not have to use the declaratory judgment procedure in order to get a prompt judicial determination of its opponent's federal rights. If the state had brought criminal charges, Archer Daniels Midland undoubtedly would have moved promptly to dismiss them on the ground of preemption, and the state court would then have decided the issue of preemption as promptly, we may assume, as the federal court would have decided it.
 
 
 11
 Besides enabling a potential defendant to get a judicial resolution of the plaintiff's claim in order to avoid debilitating legal uncertainty, the Declaratory Judgment Act enables a plaintiff to save the time and expense of litigating remedial issues, in the hope that if his right to relief is authoritatively established the defendant will voluntarily stop violating it. See, e.g., United States v. Mississippi Power & Light Co., 638 F.2d 899, 902-03 (5th Cir.1981). One can imagine the State's Attorney of Peoria County thinking that if he got a definitive judicial resolution of his right to prosecute Archer Daniels Midland the company would immediately cease its illegal activity, in order to minimize its criminal liability. But if the State's Attorney had really wanted this, he would have asked the court to decide whether Archer Daniels Midland had violated the Illinois Strikebreakers Act, for Archer Daniels Midland was arguing vigorously that there had been no strike within the meaning of the Act and, more persuasively, that Payne & Keller rather than it was the employer of the alleged "professional strikebreakers." In any event, the Declaratory Judgment Act cannot be used to confer federal jurisdiction over a suit for a declaration of rights under state law. Since the only source of the State's Attorney's rights was state law, he could, on the authority of the patent cases and Baker, get into federal court only to remove a cloud created by the threat of a suit against him based on federal law. There was no cloud, no threat, and therefore no basis for using the Declaratory Judgment Act to bring this suit in (or remove it to) federal court. Hence there is no federal subject-matter jurisdiction, which depends in this case on a showing that the case can be maintained under the Declaratory Judgment Act; for if it cannot be so maintained, the only basis for removal, or for an original action in federal court, would be that the defendant had a defense of federal preemption, which is not a valid basis for original or removal jurisdiction in this circuit.
 
 
 12
 Even if this circuit's position on that question is wrong, this would not change our conclusion that there is no subject-matter jurisdiction. The disagreement between the State's Attorney and Archer Daniels Midland with regard to the validity and scope of the Illinois Strikebreakers Act had not ripened into an actual controversy within the meaning of Article III of the Constitution when this suit was brought. Although the Declaratory Judgment Act enlarged the statutory jurisdiction of the federal courts, it could not enlarge the jurisdiction conferred on them by Article III and therefore could not empower them to give advisory opinions.
 
 
 13
 The term "advisory opinion" is often just a conclusion; it is what you call a decision that does not resolve an actual case or controversy. But what the State's Attorney is asking for in this case is pretty close to an advisory opinion in the literal sense, on which see Hart and Wechsler's The Federal Courts and the Federal System 64-74 (2d ed. 1973). Apparently he had not yet decided whether to respond to union demands that he bring criminal charges against Archer Daniels Midland when he filed his original complaint in state court, for the complaint does not allege that he intended to bring charges. Before making up his mind he wanted to know whether he might come a cropper on preemption. He could have asked experts on labor law for their advice but decided instead to seek advice in a more authoritative quarter--the Illinois courts. When the case was removed to federal court he amended the complaint to allege that he "will" file criminal charges against Archer Daniels Midland, but he did not say when, or that he would file charges even if he lost the declaratory judgment action. His amended complaint was filed almost two years ago and he still has not filed criminal charges. Evidently he will not make a final decision whether to prosecute Archer Daniels Midland until he gets authoritative judicial advice. There is thus no actual controversy between him and the company but only a potential controversy that will become actual if and when he prosecutes.
 
 
 14
 This case illustrates most of the reasons why Article III has been construed to forbid advisory opinions. One is a desire to conserve judicial time and effort by avoiding unnecessary adjudication. Even if the State's Attorney prevailed on the merits of his declaratory judgment suit, he still might not bring criminal charges against Archer Daniels Midland. Apart from all the other factors that enter into the exercise of the broad discretion that prosecutors in this country enjoy, he would have to consider whether Archer Daniels Midland's conduct was within the scope of the Illinois Strikebreakers Act--a doubtful proposition on the face of the statute, given that none of Archer Daniels Midland's own employees is alleged to be a "professional strikebreaker." Rendering a judgment, and on a constitutional issue (the validity of the Illinois Strikebreakers Act under the supremacy clause) at that, thus might turn out to have no practical significance to the parties. But it would have significance, of an unhappy kind, for the federal courts. A practice of giving advisory opinions would promote friction with the other branches of government--here a state legislature--by multiplying the occasions on which the federal courts would have to decide whether governmental action is invalid.
 
 
 15
 Although the further, familiar concern that an advisory opinion might be ill-informed and unreliable because the factual record on which it was based was incomplete or hypothetical is not important in this case, an advisory opinion on federal preemption would be hypothetical in a different sense. The State's Attorney wanted to know what would happen if he brought a criminal case and Archer Daniels Midland raised a defense of federal preemption. But a criminal case might never reach the point where such a defense had to be adjudicated. Archer Daniels Midland might convince the state criminal court that its conduct was not subject to the Illinois Strikebreakers Act. Or the state might persuade the court to construe the Act as applicable not to "scabs" (as the Act reads) but to "goons," like the Byrnes Act, 18 U.S.C. Sec. 1231, to which the state in its brief improbably likens the Illinois Act; and it might prove that Payne & Keller was hired to intimidate the pickets rather than to replace them in the work force. This would change the preemption issue.
 
 
 16
 The foregoing objection to advisory opinions may seem like a repetition of the first objection, but it is distinct though it leads to the same conclusion--that the advisory opinion might turn out to have no consequences. That can happen not only if the advice is in the end not acted on but if it is limited to a single question and other questions turn out to be decisive. And because an advisory opinion may be less consequential than a decision in an actual controversy, the parties may not invest sufficient resources in contesting the issues to give the court the information it needs to decide them correctly.
 
 
 17
 That the State's Attorney is really asking just for an advisory opinion can be further seen by supposing that instead of the State's Attorney having sued Archer Daniels Midland the company had sued to enjoin him from prosecuting it. Our decision in Nuclear Engineering Co. v. Scott, 660 F.2d 241, 252-53 (7th Cir.1981), suggests that the company would have had tough sledding to establish jurisdiction. See also People of State of Illinois v. General Elec. Co., supra, 683 F.2d at 210. In Nuclear Engineering, the Attorney General of Illinois had announced at a press conference that he intended to sue Nuclear Engineering Company for violating Illinois' environmental laws, and Nuclear Engineering promptly sued in federal court to enjoin him from carrying out his threat, on the ground that the suit he contemplated was barred by federal law. This court held that there was no actual controversy between the company and the state. As in this case, the company argued that it had not violated state law. If so, the Attorney General might not carry out his threat to sue, and if he did sue his suit would fail on state law grounds. In either case the federal issue would never be reached, and this gave the company's suit the character of a request for an advisory opinion. To establish jurisdiction, the company would have had to show that the threat of suit was inhibiting its activities, as by driving away investors or customers, and it did not. 660 F.2d at 252.
 
 
 18
 Similarly, to maintain in federal court a suit under the supremacy clause to enjoin the State's Attorney from prosecuting it, Archer Daniels Midland would have to show that the threat of such a prosecution was inhibiting its business--maybe by deterring nonunion contractors from working for it. By the same token, for the State's Attorney to maintain his suit in federal court he would have to show more than that he might prosecute Archer Daniels Midland if he got a ruling that such a prosecution would not violate the supremacy clause. He would have to show that his inability to get this question of federal law resolved other than by bringing criminal charges was interfering with his activities. We are doubtful that he could show this, and certain that he has not tried. He asked the district court for an advisory opinion, and without for a moment questioning the soundness of the advice he received we are constrained to hold that the district court did not have the power to give it to him.
 
 
 19
 The judgment of the district court is vacated with directions to dismiss the complaint for lack of subject-matter jurisdiction. No costs in this court.
 
 
 20
 SO ORDERED.