Shelley GORKA, a minor, By Next Friend her mother, Sauncey GORKA, et al., Plaintiffs–Appellants,

v.

Cheryl SULLIVAN in her individual capacity and as secretary of the Indiana Family and Social Services Administration, et al., Defendants–Appellees.

No. 95–3170.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1996.

Decided May 6, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied June 12, 1996.

Thomas R. Ruge, Richard T. Trettin, Todd A. Richardson (argued), Lewis & Kappes, Indianapolis, IN, Randall R. Fearnow, David F. McNamar, McNamar, Fearnow & McSharar, Indianapolis, IN, for Plaintiffs-Appellants.

Pamela Carter, Beth Henkel (argued), Office of Atty. Gen., Indianapolis, IN, for Defendants-Appellees.

Before CUMMINGS, MANION, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

The doctrine of sovereign immunity gives broad protection to the states. And a sharply divided Supreme Court has recently broadened that protection. But does the doctrine operate as a sword as well as a shield? Can a state remove a case to a federal forum, only to contend that no relief can be granted against it when it gets there? That is the issue we touch on today.

This lawsuit was filed to prevent the state of Indiana from lowering its Medicaid reimbursement rate to providers of transportation services to Medicaid recipients. Medicaid, a program set out at 42 U.S.C. § 1396 *et seq.*, is, of course, designed to provide medical services to low-income people. State participation in the program is not mandatory, but if a state elects to participate—as Indiana does—it must comply with federal requirements. Medicaid requires that necessary transportation be provided to eligible Medicaid recipients. Indiana's Medicaid plan, therefore, provides reimbursement for transportation services.

The plaintiffs in our suit are Shelley Gorka, a 16-year-old Medicaid-eligible kidney dialysis patient from Whiteland, Indiana, her mother, and 10 commercial transportation providers who contracted with the state of Indiana to provide services. All of the providers are Indiana entities and some are regulated by the Interstate Commerce Commission with tariff rates on file with that agency. The providers have all entered into a standard Medicaid provider agreement. To be eligible for reimbursement, a provider cannot limit its services to Medicaid recipients, and its billings for Medicaid recipients cannot be greater than its charges to private customers.

Perceiving rapidly rising costs, Indiana performed an evaluation of its transportation program and decided to cut reimbursements rates. This lawsuit followed. The 12 Hoosier plaintiffs wanted to duke it out at home so they filed the suit against the state in the superior court for Marion County, Indiana. The defendants—Indiana agencies and state officials—had other ideas; they removed the case to the federal court. Because some of the claims were barred by the doctrine of sovereign immunity, the plaintiffs vigorously, but unsuccessfully, attempted to have the case sent back to state court. That effort failed, and ultimately judgment was entered for the defendants on the claims brought under federal law.

▇ The dispositive issue before us is whether the case was properly removed, pursuant to 28 U.S.C. § 1441, or whether—even at this late date—the judgment must be vacated and the case remanded to the state court.

The issue requires a tedious but necessary examination of the procedural history of the case. The complaint was filed against the Indiana Family and Social Services Administration, its secretary, Cheryl Sullivan, the Indiana Office of Medicaid Policy and Planning, and its assistant secretary, James M. Verdier. Ms. Sullivan and Mr. Verdier were sued in their official capacities. The plaintiffs invoked jurisdiction under a number of Indiana statutes and 42 U.S.C. § 1983. They

sought declaratory and injunctive relief, damages, and attorney fees.

The Indiana defendants filed a timely notice of removal, alleging that the district court had original federal question jurisdiction over plaintiffs' claims for violation of federal law pursuant to 28 U.S.C. §§ 1331 and 1343. In the notice of removal, defendants Sullivan and Verdier also stated that they did "not waive their Eleventh Amendment immunity from damages in their official capacity." In fact, it is undisputed that the state of Indiana has not waived its sovereign immunity nor is there any dispute that sovereign immunity barred many of the claims set out in the original complaint.

Eight days after the removal, the plaintiffs filed a motion to remand the suit to state court, stating that it involved intricate questions of state law and claims against state agencies and state officials in their official capacities. Complete relief would be barred, they noted, in federal court because of the assertion of sovereign immunity. Plaintiffs lost but tried again, filing a motion for reconsideration, in which they stressed that sovereign immunity barred their claim for damages. This time they argued that at the very least, their state law claims, including damage claims under state law, must be remanded. The defendants opposed this motion as they had the first one, urging the court to exercise jurisdiction over all claims. Again, the court declined to remand the action.

Soon thereafter, the district court held a conference in which the plaintiffs agreed, in an effort to facilitate at least a partial remand to state court, to file two amended complaints, one with federal claims, the other with state claims. We view the documents, however, as one complaint as we believe we must under Rules 7(a) and 18 of the Federal Rules of Civil Procedure.

The amended complaint, for the first time, asserted § 1983 claims against Ms. Sullivan and Mr. Verdier in their individual capacities but also retained the claims against them in their official capacities. The district court retained jurisdiction over all claims—state and federal—until it ruled against the plaintiffs on the merits of the federal claims. It then remanded the state law claims.

On appeal, the recipients and providers argue that recent decisions, including *Frances J. v. Wright*, 19 F.3d 337 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), compel the conclusion that the entire case should have been remanded. We agree. In fact, were there any doubts about the law or the policy underpinnings of that decision, they should be laid to rest by the expansive view of sovereign immunity recently taken by the Supreme Court in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In that case the doctrine was seen as a bar, not just on the courts, but in fact on Congress's power to abrogate a state's sovereign immunity.

*Seminole Tribe* will, almost certainly, revitalize what we described as the "lively debate in judicial and academic circles" about issues of sovereign immunity. *Smith v. Wisconsin Dep't of Agriculture*, 23 F.3d 1134, 1139 (7th Cir.1994). The Eleventh Amendment, by its own terms, prevents the exercise of federal jurisdiction over suits against a state brought by citizens of another state. In *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court determined that a citizen of a state may not prosecute a suit against his own state in federal court. The debate on the propriety of that over 100–year–old holding is spread throughout *Seminole Tribe*. The doctrine survives unscathed. The aspect of the debate we considered in *Smith* was whether the *Hans* doctrine was in the nature of a common law immunity or a jurisdictional bar. We determined that the issue had been resolved in *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994): it was a jurisdictional bar.

In *Frances J.*, we turned our attention more directly to the removal jurisdiction of the federal courts, pursuant as 28 U.S.C. § 1441(a). In that case, as Indiana did here, Illinois removed the case to federal court. In what the court called a "paradoxical jurisdictional maneuver," Illinois then argued on appeal that the federal forum lacked subject matter jurisdiction. We determined that "a

state's sovereign immunity, whether rooted in the *Hans* doctrine or the Eleventh Amendment, limits the original subject matter jurisdiction of the federal courts." At 340. If an action contains claims barred by sovereign immunity, it cannot be removed from state courts to a federal forum because it does not meet the requirements of § 1441(a)—it is not within the original jurisdiction of the district courts. We said that "if even one claim ... is jurisdictionally barred from federal court by a state's sovereign immunity ..., then, as a consequence of § 1441(a), the whole action cannot be removed to federal court." At 341. We expressed a concern that defendants engaging in removal under circumstances in which there are both barred and unbarred claims might merely be hoping to split the prospective from the retrospective relief:

> Since state courts have the power to adjudicate such federal questions, preventing a defendant from splitting a single case into two, one state and the other federal, furthers judicial economy.

At 341.

Though they may disagree with that attribution of motives, the Indiana defendants in this case do not seriously dispute that the principle set out in *Frances J.* supports remand of the original complaint. But they contend that actions taken by the plaintiffs after the removal make the exercise of jurisdiction by the federal court proper. Specifically, citing *People of the State of Illinois ex rel. Barra v. Archer Daniels Midland,* 704 F.2d 935 (7th Cir.1983), and *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), they contend that the amendment to the complaint cures any jurisdictional problem which may have existed.

We see significant differences between those cases and the present one. In both *Archer Daniels Midland* and *Grubbs,* the courts specifically mentioned that the plaintiffs did not object to the federal forum. In *Grubbs,* the Court determined that the propriety of the removal could not be raised for the first time on appeal when federal jurisdiction in fact existed at the time of judgment. In *Archer Daniels Midland,* the

plaintiffs "apparently content to litigate in federal court," amended their complaint to invoke federal jurisdiction. At 939. The amendment, we also note, was unsuccessful in its attempt to assert federal jurisdiction, and the resolution of the appeal was that the judgment was vacated with instructions to dismiss the complaint.

In the present case, while the Medicaid recipients and providers reluctantly amended their complaint, their purpose was to facilitate remand of the state claims. They were not "content to litigate in federal court." They were trying to make the best of a bad situation; a situation, we might add, they did not create.

What is more important, though, is that the amendment did not eliminate the problem. The district court retained the entire case until it ruled on the merits of the federal claims. In other words, the entire time the case was pending, state law claims existed as to which sovereign immunity was a bar. Those claims include violations of state statutory, procedural and constitutional law, and an award of damages against defendants in their official capacity. In addition, while the amendment set out, for the first time, federal claims against the officials in their individual capacity, it maintained damage claims against those persons in their official capacity as well. The official capacity claims for retrospective relief are clearly barred. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Like *Frances J.,* the case was not within the original jurisdiction of the federal court, and the danger foreseen in that case occurred in this one: the plaintiffs were forced to litigate in two forums. Accordingly, the judgment of the district court is vacated and the case returned to the district court with instructions that it be remanded to state court, the forum originally selected by these Indiana plaintiffs for the airing of their beef with their state. Costs are awarded to the appellants, the judgment is VACATED.