CATERPILLAR INC., Plaintiff,

v.

Kevin W. LYONS, et al., Defendants.

No. 03–1245.

United States District Court, C.D. Illinois.

May 14, 2004.

704

Columbus R. Gangemi, Jr., Gerald C. Peterson, Joseph J. Torres, Winston & Strawn LLP, Chicago, IL, L. Lee Smith, David William French, Hinshaw & Culbertson Peoria, IL, for Plaintiff.

Karen L. McNaught, Terence J. Corrigan, Illinois Attorney General, Springfield,

IL, John J. Toomey, Arnold & Kadjan, Chicago, IL, for Defendants.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiff Caterpillar Inc.'s Motion for Summary Judgment [Doc. # 53]. The Court grants this motion for the following reasons.

## BACKGROUND

Plaintiff Caterpillar Inc. ("Caterpillar") is a Delaware corporation with its principal place of business in Peoria, Illinois. Caterpillar manufactures, sells, and distributes earthmoving equipment and engines and engages in other related activities throughout the United States and the rest of the world. Along these lines, Caterpillar operates manufacturing and parts distribution facilities in Peoria, Tazewell, Macon, Kane, Kendall, Livingston, and Will Counties.[1]

The 7,000 employees employed at those facilities are represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its affiliated Local Unions 974, 751, 145, and 2096 ("UAW"). There are also over 1,000 Caterpillar employees at Caterpillar's Will County facilities represented by the International Association of Machinists and Aerospace Workers and its Local Lodge Nos. 851 and 401 ("IAM"). Caterpillar recognizes the UAW and IAM unions as the bargaining representatives for its employees pursuant to the elections conducted by the National Labor Relations Board ("NLRB") under Section 9 of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, ("NLRA"). The exception to the preceding is IAM Local Lodge No. 401, which Caterpillar has voluntarily recognized.

Caterpillar initiated this lawsuit on account of the state of its collective bargaining agreements ("CBA") with its unions. Caterpillar's current CBA with the UAW expired on April 1, 2004, and its CBA with IAM Local Lodge No. 851 is set to expire on May 1, 2005. Caterpillar and the UAW are currently engaged in negotiations for a new labor contract. At the moment, Caterpillar and IAM are preparing to negotiate the successor labor contract to the one that expires on May 1, 2005.

There is one wrinkle to these negotiations that forms the basis of this lawsuit. The Illinois Employment of Strikebreakers Act, 820 ILCS 30/1, *et seq.* ("ESA") provides for the following:

> No person shall knowingly employ any professional strikebreaker in the place of an employee, whose work has ceased as a direct consequence of a lockout or strike, or knowingly contract with a day and temporary labor service agency to provide a replacement for the employee, during any period when a lockout or strike is in progress. Nor shall any professional strikebreaker take or offer the place in employment of employees involved in a lockout or strike.

820 ILCS 30/2.[2] A professional strikebreaker is defined under the ESA as "any person who repeatedly and habitually offers himself for employment on a temporary basis where a lockout or strike exists to take the place of an employee whose

---

1. There is a factual dispute as to the existence of a Caterpillar facility in Kane County. The State has produced an affidavit averring that Caterpillar does not have any facilities in Kane County. The State does not dispute, however, the existence of Caterpillar facilities in the other named counties. This factual dispute does not affect the actual merits of Caterpillar's claim regarding the preemption of the Illinois Employment of Strikebreakers Act.

2. This includes the amendments the Illinois State legislature made to the ESA that became effective as of January 1, 2004.

work has ceased as a direct consequence of such lockout or strike." 820 ILCS 30/1(c). More importantly, the ESA defines "day and temporary labor service agency" as having the same meaning that the term has under the Day and Temporary Labor Services Act, 820 ILCS 175/1, *et seq.*, ("Day Labor Services Act"). 820 ILCS 30/1. According to the Day Labor Services Act, a "day and temporary labor service agency" is defined as "any person or entity engaged in the business of employing day or temporary laborers to provide service to or for any third party employer pursuant to a contract with the day or temporary labor service and the third party employer." 820 ILCS 175/5.

As a result, any employer that knowingly hires either a professional strikebreaker or knowingly contracts with a day and temporary labor service agency to provide replacement for its employees in the event of a strike or lockout is subject to criminal penalties under the ESA in the form of a Class A misdemeanor. 820 ILCS 30/2, 30/4. Caterpillar believes that it would be otherwise able to use both professional strikebreakers and contract with day and temporary labor service agencies under the NLRA. As a result, Caterpillar has filed this lawsuit seeking a declaratory judgment to the effect that the NLRA preempts the ESA and that the ESA violates Caterpillar's right to equal protection under the Fourteenth Amendment. Caterpillar has sued the Defendants in their official capacities as the States' Attorneys for the Illinois counties named in this suit who are charged with enforcing the ESA. (Except as otherwise identified, the Defendants collectively are referred to as "the State."). This matter is fully briefed and this Order follows.[3]

**LEGAL STANDARD**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets it burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable jury could return

---

**3.** Defendant Jeffrey Tomczak ("Tomczak"), State's Attorney for Will County, has chosen to join with his fellow State's Attorneys by adopting their response. Unlike his colleagues, who are represented by the Illinois Attorney General, Tomczak has chosen to be represented by a private law firm.

a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

## DISCUSSION

As stated in the Court's earlier opinions, this case presents purely legal questions that are now ready for resolution.[4] Caterpillar contends that the ESA violates both the Supremacy Clause of the United States Constitution in that the ESA is preempted by the NLRA. In the alternative, Caterpillar argues that the ESA violates the equal protection clause of the Fourteenth Amendment. The Court holds that the ESA is preempted by the NLRA and therefore in violation of the Supremacy Clause for the following reasons. As a result, the Court need not address Caterpillar's Fourteenth Amendment arguments.

### I. *Machinists* Preemption

The Supremacy Clause of the United States Constitution states in the relevant part that "the Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the su-

preme Law of the Land." U.S. Const., art. VI, cl. 2. The Supremacy Clause invalidates all state laws that conflict with or interfere with acts of Congress. *Rose v. Ark. State Police,* 479 U.S. 1, 3, 107 S.Ct. 334, 334–35, 93 L.Ed.2d 183 (1986). "Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994).

Congress enacted the NLRA as a comprehensive code to regulate labor relations in activities that affect interstate and foreign commerce. *Nash v. Fla. Indus. Comm'n,* 389 U.S. 235, 238, 88 S.Ct. 362, 365–66, 19 L.Ed.2d 438 (1967). The NLRA safeguards the right of employees to self-organization and to select representatives for collective bargaining. 29 U.S.C. § 157; *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 33, 57 S.Ct. 615, 622, 81 L.Ed. 893 (1937). The NLRA reflects Congress' intent to create a uniform, national body of labor law that is interpreted and administered by a centralized expert agency, the National Labor Relations Board ("NLRB"). *N.Y. Tel. Co. v. N.Y. State Dep't of Labor,* 440 U.S. 519,

4. The State's response to Caterpillar's motion for summary judgment is frankly puzzling to the Court. Despite requesting and receiving an additional two weeks to file its response, the State has blithely chosen to ignore the very heart of this lawsuit, i.e., the question of preemption. Instead, the State has decided to keep flogging the proverbial dead horse by obstinately raising the issue of ripeness for the third time. The question of ripeness formed the backbone of the State's second motion to dismiss that the Court denied in detail in its November 20, 2003, Order. Despite this setback, the State again chose to raise the issue of ripeness in response to Caterpillar's motion to preliminarily enjoin the application of the ESA pending a ruling on the merits. In doing so, the State avoided making any arguments regarding the merits of Caterpillar's underlying claim of preemp-

tion. In its March 26, 2004, Order, the Court again rejected the State's ripeness argument in granting Caterpillar's motion for preliminary injunction and admonished the state that it would not reconsider its earlier decision. It appears that the State has yet to take the hint.

The labor contract between Caterpillar and the UAW expired on April 1, 2004. As a result, the State's arguments on ripeness ring more hollow now than they did before. The Court could summarily grant summary judgment in favor of Caterpillar, but the Court has decided instead to address the issue of preemption in the interests of substantial justice and in consideration of the importance of the issues involved. In doing so, the Court will not brook any longer the State's attempts to avoid a ruling on the merits and drag out these proceedings.

528, 99 S.Ct. 1328, 1334–35, 59 L.Ed.2d 553 (1979). The NLRA also sets the parameters for conduct between labor and management in a variety of contexts. For example, the NLRA contains prohibitions against unfair labor practices by employers, 29 U.S.C. § 158(a), and prohibitions against unfair labor practices by labor organizations. 29 U.S.C. § 158(b). The NLRA also provides for both labor and management to bargain with each other in good faith. 29 U.S.C. §§ 158(a)(5) & (b)(3). In the course of negotiating, both labor and management are permitted to enhance their respective bargaining position by exerting economic pressure on one another by employing various economic weapons in their respective arsenals. The Supreme Court has noted that "Congress has been rather specific when it has come to outlaw particular economic weapons and that Congress' decision to prohibit certain forms of economic pressure while leaving others unregulated represents an intentional balance between the uncontrolled power of management and labor to further their respective interests." *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 614, 106 S.Ct. 1395, 1398–99, 89 L.Ed.2d 616 (1986) (internal citations and quotations omitted). Under the *Machinists* preemption doctrine, "[s]tates are therefore prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts unless such restrictions were presumably contemplated by Congress." *Id.* at 614–15, 106 S.Ct. at 1399 (citing *Machinists v. Wis.*

*Employment Relations Comm'n,* 427 U.S. 132, 147, 96 S.Ct. 2548, 2556, 49 L.Ed.2d 396 (1976)). In determining whether a state's regulation is preempted, the crucial inquiry under *Machinists* is whether " 'the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's [NLRA's] processes.' " *Machinists,* 427 U.S. at 147–48, 96 S.Ct. at 2557, quoting *Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 380, 89 S.Ct. 1109, 1116, 22 L.Ed.2d 344 (1969).

▇ The ESA is the subject of this particular lawsuit. As stated *supra,* the ESA subjects to criminal sanctions any employer who knowingly employs either professional strikebreakers or knowingly contracts with a day and temporary labor service agency to provide replacements for its employees in the event of a strike or lockout. 820 ILCS 30/2, 30/4. The question, then, is whether the ESA serves to intrude into the collective bargaining process to an extent not countenanced by Congress. *Golden Transit,* 475 U.S. at 616, 106 S.Ct. at 1399. For if that is the case, the ESA would frustrate the effective implementation of the NLRA's processes.

In the event an employer faces a work stoppage or strike by its union during the course of negotiating a new labor contract, the employer is faced with a Hobson's choice. The employer can forgo hiring replacements to alleviate the disruption to its business or it can risk the threat of a criminal conviction.[5] The practical result

---

**5.** It is perhaps arguable (although the State has failed to raise this or any other argument with regard to the issue of preemption) that the ESA only prevents employers from using a third party intermediary to hire temporary replacements. This would conceivably leave open for employers the option of hiring said temporary replacements directly. It is unclear to the Court the degree to which an employer's ability to effectively hire temporary workers would be affected. However,

direct hiring as opposed to using a third party with a ready pool of temporary workers would appear to be a far less optimum solution. The Court can easily envision scenarios where an employer's ability to efficiently resume its business in the event of a strike would be significantly compromised if it were deprived the services of temporary and day labor agencies.

of this scenario is that an employer's ability to bring countervailing economic pressure against a striking union is greatly diminished by the ESA. The ESA therefore impacts the collective bargaining process by decisively shifting the balance of power in favor of labor to the detriment of management.

It is by now axiomatic that "the use of economic pressure by the parties to a labor dispute is not a grudging exception [under] ... the [federal] Act; it is part and parcel of the process of collective bargaining." *Machinists*, 427 U.S. at 149, 96 S.Ct. at 2557 (internal quotation and citation omitted). By depriving employers of an economic weapon of self-help, i.e., the hiring of professional strikebreakers and the use of third party day and temporary labor agencies, the ESA upsets Congress' intended balance of power between labor and management. *See Golden Transit*, 475 U.S. at 614, 106 S.Ct. at 1399. The ESA is therefore an intrusion into the substantive process of collective bargaining beyond the extent countenanced by Congress. *See id.* at 616, 106 S.Ct. at 1399. Accordingly, the Court holds that the ESA is preempted by the NLRA under the *Machinists* doctrine of preemption.

The Court's conclusion is supported by a brief survey of the relevant precedent. The *Machinists* case dealt with a situation where there was a union policy to refuse overtime work while negotiating for renewal of an expired labor contract. The union's policy was a form of self-help designed to bring economic pressure in its favor upon the employer to negotiate a favorable labor contract. Unable to succor

relief from the NLRB, the employer turned to the Wisconsin Employment Relations Commission ("WERC") for aid. The employer sought and received a declaration that the union's refusal to work overtime constituted an unfair labor practice under Wisconsin law. The WERC entered a cease and desist order commanding the union to withdraw its policy of refusing overtime. The union appealed the decision on the grounds that the WERC lacked jurisdiction. Upon review, the Wisconsin appellate court and Wisconsin supreme court denied the union's appeal.

Upon review, the United States Supreme Court held that the Wisconsin law was preempted by the NLRA. *Machinists*, 427 U.S. at 148–49, 96 S.Ct. at 2557. Instead of filling a regulatory gap, the Supreme Court found that the State of Wisconsin had in effect attempted to regulate economic pressure that Congress had deliberately left unregulated. *See id.* at 150, 96 S.Ct. at 2558. By removing an economic weapon that Congress had meant for unions to have, the Wisconsin statute impeded the "execution of the full purposes and objectives of Congress." *Id.* at 151, 96 S.Ct. at 2558.

The Supreme Court revisited this issue several years later in *Golden Transit*. The City of Los Angeles essentially conditioned the extension of a taxi cab franchise on the employer settling its labor dispute with its union by a certain date. The employer failed to do so and its franchise expired. Following the line of reasoning established earlier in *Machinists*, the Supreme Court held that the city's actions in essentially setting a deadline for resolution

Moreover, this line of reasoning assumes that some infringement of an employer's right in the collective bargaining process is permissible so long as the state action does not completely extinguish it. However, "[p]reemption doctrine prohibits state action that

infringes on such rights in more than a collateral way as well as action that completely eliminates them." *Charlesgate Nursing Center v. State of Rhode Island*, 723 F.Supp. 859, 866 (D.R.I.1989).

of the labor dispute was preempted by the NLRA. *Golden Transit,* 475 U.S. at 618, 106 S.Ct. at 1401. In doing so, the Supreme Court noted that the NLRA only required the parties to negotiate in good faith, but did not require the parties to actually reach an agreement. *Id.* at 616, 106 S.Ct. at 1399–1400. As a result, the City of Los Angeles' insistence on a settlement as a precondition for an extension of the franchise constituted an impermissible intrusion into the substantive aspects of the collective bargaining process. *See id.* at 615–16, 106 S.Ct. at 1399.

Within our circuit the case of *Cannon v. Edgar,* 33 F.3d 880 (7th Cir.1994) is instructive.[6] The union in *Cannon* challenged the Illinois Burial Rights Act that required cemeteries and gravediggers to negotiate for establishment of a pool of workers designated to perform certain religiously required interments during labor disputes. Upon review, the Seventh Circuit affirmed the decision of the district court holding that the Act was preempted by the NLRA. *See id.* at 886. The appellate court considered the issue of *Machinists* preemption and analogized the case to *Golden Transit. See id.* at 885. In doing so, the appellate court stated that the act "directly interferes with the abilities of cemeteries and gravediggers to reach an agreement unfettered by the (labor) restrictions of state law." *Id.* at 886.

The preceding cases bolster the Court's conclusion that the ESA is preempted by the NLRA. In many ways, the ESA is a more invasive intrusion into the collective bargaining process than the state actions preempted in the preceding cases. As the

---

**6.** Caterpillar and the State both mention the case of *People ex rel Barra v. Archer Daniels Midland Co.,* 704 F.2d 935 (7th Cir.1983), albeit for different reasons. *Barra,* incidentally, involved the very same ESA at issue in the instant case. This iteration of the ESA did not include the recent 2004 amendment that precludes employers from knowingly contracting with third party day and temporary employee agencies.

The Peoria County State's Attorney filed this suit seeking a declaratory judgment determining whether or not the ESA was preempted by federal law. The defendant removed the case to federal district court. Instead of contesting the removal, the State's Attorney filed an amended complaint. The district court granted defendant's motion for summary judgment and held that the ESA was indeed preempted by federal labor law.

Upon reviewing the case, the Seventh Circuit Court of Appeals vacated the district court's judgment and directed the district court to dismiss the action for want of subject matter jurisdiction. *See id.* at 943. Before discussing the pertinent procedural aspects of the case, however, the appellate court mentioned in passing that other jurisdictions considering state legislation similar to the ESA had held such statutes to be preempted by federal labor law. *See id.* at 938, citing *Illinois v. Federal Tool & Plastics,* 62 Ill.2d 549, 344 N.E.2d 1 (1975); *U.S. Chamber of Commerce v. New Jersey,* 89 N.J. 131, 445 A.2d 353 (1982); *Alton Box Bd. Co. v. City of Alton,* 77 L.R.R.M. 2123 (S.D.Ill.1971).

There is a very important difference between this case and *Barra.* The plaintiff in *Barra* was the State's Attorney who was seeking what the appellate court determined to be an advisory opinion on the validity of the ESA. *See id.* at 942. As stated *supra,* the Illinois State's Attorneys are charged with enforcing the ESA. As a result, the ESA did not function to inhibit the *Barra* plaintiff's activities as he was free to go about and conduct his business without the threat of being subjected to a suit under the ESA. *See id.* at 943. There was therefore no actual controversy and the suit was barred by Article III of the United States Constitution. *See id.* at 941–42.

The plaintiff in the instant case is an actual employer whose bargaining power is being immediately and adversely affected by the ESA. The Court's jurisdiction over this case is proper since there has been a showing that the threat of a suit under the ESA is inhibiting Caterpillar's activities. *See id.* at 942–43. While the State quibbles with this conclusion, the State has never affirmatively disavowed any intention to prosecute Caterpillar under the ESA.

Supreme Court has recognized, national labor relations policy has two factors existing side by side, the "necessity for good faith bargaining between the parties and the availability of economic pressure devices to each to make the other party incline to agree to one's terms...." *N.L.R.B. v. Ins. Agents' Int'l Union, AFL–CIO,* 361 U.S. 477, 489, 80 S.Ct. 419, 427, 4 L.Ed.2d 454 (1960). Economic force is important because it is a "prime motive power for agreements in free collective bargaining." *Id.* In the negotiation process, the parties' "negotiating positions are apt to be weak or strong in accordance with the degree of economic power the parties possess." *Id.* By weakening the economic power of the employers, the ESA has altered the balance of power created by Congress; something that is beyond the scope of the State of Illinois' power.

## II. *Garmon* Preemption

 Caterpillar also contends that the ESA is preempted under the *Garmon* preemption doctrine. *Garmon* preemption forbids state and local regulation of activities that the NLRA protects or prohibits or arguably protects or prohibits. *Cannon,* 33 F.3d at 884. This doctrine "is designed to prevent conflict between state and local regulation and Congress' integrated scheme of regulation embodied in 29 U.S.C. §§ 157 & 158." *Id.* There are two exceptions, however. "A claim is not preempted under *Garmon* if the regulated activity is (1) merely of peripheral concern to the federal labor laws or (2) touches interests deeply rooted in local feeling and responsibility." *Id.*

 It is clear from the Court's discussion of *Machinists* that the ESA regulates an activity of central concern to federal labor law. Therefore, the ESA does not fall within the first exception to *Garmon.*

Nor can the State claim that there is anything deeply rooted in local feeling that would justify the ESA's encroachment onto the collective bargaining process. As a general rule, the typical example of these exceptions would be general state tort and criminal law. *Id.* This is not a case involving the "[p]olicing of actual or threatened violence to persons or destruction of property [which] has been held most clearly a matter for the States." *Machinists,* 427 U.S. at 136, 96 S.Ct. at 2551. The ESA also does not offer "police protection against goons and other like-minded perpetrators of labor-related violence." *Cannon,* 33 F.3d at 885. Accordingly, the Court holds that the ESA is preempted under *Garmon.*

### CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Caterpillar Inc.'s Motion for Summary Judgment [Doc. # 53] is GRANTED.

CASE TERMINATED.