In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2270

ABDULLAH ENNIN,

*Plaintiff-Appellant,*

*v.*

CNH INDUSTRIAL AMERICA, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-01359 — **Richard L. Young**, *Judge*.

ARGUED NOVEMBER 30, 2017 — DECIDED DECEMBER 27, 2017

Before EASTERBROOK and MANION, *Circuit Judges*, and LEE,
*District Judge*.[*]

MANION, *Circuit Judge*. Abdullah Ennin appeals from a
judgment in favor of his employer in this discrimination case.
He claims that CNH Industrial America terminated his em-
ployment because of his race and national origin, disability,

[*] The Honorable John Z. Lee of the United States District Court for the
Northern District of Illinois, sitting by designation.

and decision to take leave under the Family and Medical Leave Act of 1993. He also alleges that CNH interfered with his rights under the FMLA, conspired to violate his federal rights under 42 U.S.C. §§ 1985 & 1986, and engaged in negligent supervision in violation of Indiana law.

We agree with the district court in all respects. First, we conclude that by not filing a surreply brief in the district court, Ennin waived the admissibility of certain evidence that CNH attacked as inadmissible. Ennin had introduced the evidence in an attempt to show that CNH terminated him on a later date than it claimed, that is, after it knew that Ennin had been disabled and taken FMLA leave. Without the evidence, the record is undisputed that CNH terminated Ennin's employment before it had knowledge of the alleged disability or his FMLA leave. Second, nothing in the record supports Ennin's argument that CNH's stated reasons for terminating his employment were pretext for any sort of discrimination. Third, CNH did not interfere with Ennin's right to take FMLA leave. And finally, Ennin's federal conspiracy and state law negligent-supervision claims necessarily fail because they are derivative of underlying violations of federally protected rights. Without any underlying violations, Ennin cannot sustain these claims. Therefore, we affirm the judgment below.

## I. Background

Ennin, who was born in Ghana and is a naturalized American citizen, began working for CNH Industrial America on January 3, 2012. CNH "designs, produces and sells agricultural and construction equipment, trucks, commercial vehi-

cles, buses and specialty vehicles, in addition to a broad portfolio of powertrain applications."[1] Ennin was the "Export Second Shift Operations Supervisor" and had dozens of hourly workers reporting to him. He reported to Export Operations Manager Michael Lewis, who in turn reported to Stephen Lincoln. Ennin was the only black supervisor at his facility in Lebanon, Indiana.

After working at CNH with no incident for more than two years, Ennin received a written warning for misconduct in May 2014. He had gotten into a verbal altercation with another supervisor over the volume of a radio playing in the break room. According to the warning, Ennin's inappropriate behavior was witnessed by two of his own hourly employees. Ennin was warned that his behavior was not acceptable because, as a supervisor, he had to set a better example for his subordinates. Both Ennin and Lewis signed the written warning.

Ennin ran into more trouble a few months later. He was on his way to work on November 17, 2014, when his car broke down. At 1:43 PM, 17 minutes before his shift was to begin, Ennin notified Lewis that he would be late to work. Ennin then called his hourly employee Gonzalo Chavez—the lead hourly employee on his shift—to ask for help. Chavez had already clocked in, but he left CNH's facility at 2:00 PM and went to help Ennin. It turned out that Ennin's car had run out of gas, so Chavez brought Ennin some gas and then both returned to CNH at 2:46 PM. Upon their arrival, Ennin permitted Chavez to follow him through the supervisor's entrance

---

[1] CNH Industrial, Homepage, http://cnhindustrial.com/en-us/Pages/homepage.aspx (last visited December 20, 2017).

after Ennin had swiped his badge, in violation of company policy. And to top it off, Ennin neglected to adjust Chavez's time sheet in CNH's timekeeping system to reflect that Chavez had been off the premises for 46 minutes while clocked in.

Once the events of November 17 were reported to Human Resources, Ennin was called in for a November 19 meeting with Lewis, Lincoln, and HR manager Stacy Darlin. They asked Ennin why he had permitted Chavez to enter the facility without swiping his own badge; Ennin responded that everyone does it and he had done it many times previously without being reprimanded. With respect to the timesheet issue, Ennin claimed that he didn't know Chavez was at work when he called, but Chavez had already told HR that he *did* tell Ennin he had already clocked in. In the end Lewis, Lincoln, and Darlin told Ennin that his actions were unacceptable, but didn't inform him of a final decision. Nevertheless, Ennin thought after the meeting that he was certain to be fired.

Darlin, Lewis, and Lincoln say they met separately shortly after their November 19 meeting with Ennin and determined that Ennin should be fired for his multiple violations of company policy. According to them, they decided to let Ennin know the next day. But later in the afternoon on November 19, Ennin texted Lewis and asked to go home because his hemorrhoids were acting up. Lewis agreed. But Ennin did not come to work on November 20. Instead, he called his doctor and scheduled a previously planned hemorrhoidectomy for November 21. Ennin requested and received leave from CNH's third-party administrator, Prudential, and said that he would return to work by January 1.

On November 20, Darlin received notice that Ennin had requested leave and would not be at work that day, so she could not inform him of his termination at work. Ennin then had his surgery, a minor procedure which allowed him to return home the same day. On December 1, while Ennin was still on leave, Darlin learned that Prudential had approved Ennin for short-term disability benefits from November 19 through December 14. That same day, she sent a letter to Ennin informing him that his employment had been terminated.[2] The letter indicated that the decision was made on November 19 and stated that Ennin was fired because of the November 17 incident with Chavez and Ennin's subsequent refusal to take responsibility for his actions.

Ennin sued CNH, arguing that he was fired because of his race, national origin, disability (related to the hemorrhoidectomy), and decision to take FMLA leave. On summary judgment, Ennin attempted to introduce evidence to show that CNH did not decide to terminate his employment until December 1. Establishing that later termination date would have allowed Ennin to argue that the decision-makers knew when they fired him that he had had surgery and that he had taken FMLA leave. However, CNH argued in its reply brief that Ennin's evidence was hearsay and unauthenticated. Ennin never filed a surreply brief, even though the local rules of the Southern District of Indiana permitted him to do so as of right to respond to evidentiary objections. As a result, the district

---

[2] Although Ennin was terminated on December 1, CNH allowed him to receive his short-term disability benefits until December 14.

court held Ennin had waived his evidentiary arguments, excluded the evidence, and then granted summary judgment to CNH based on the rest of the record. Ennin timely appealed.

## II. Analysis

### A. Exclusion of Ennin's Proffered Evidence

As a threshold matter, we must resolve the dispute over Ennin's proffered evidence. Ennin claims that the evidence he submitted—particularly emails and texts involving the decision-makers at CNH—proves that CNH did not make its decision to fire him until December 1. If we were to consider the evidence and agree that it creates a genuine issue of fact, that would at least somewhat bolster Ennin's disability discrimination and FMLA retaliation claims. So we must determine whether the district court properly excluded the evidence.

The district court treated CNH's evidentiary objections as unopposed because Ennin failed to file a surreply brief to respond to them. Failure to respond to an argument generally results in waiver, and failure to present an argument to the district court usually means we will not address it on appeal. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond in the district court); *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017) (arguments presented for the first time on appeal are waived).  Nevertheless, we have held that "a party need not seek leave to file a sur-reply in order to preserve an argument for purposes of appeal," *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011). The question here, which we have not yet answered, is whether a party must file a surreply to preserve an argument when such a brief is permitted as of right by the district court's local rules.

In the context of evidentiary objections necessarily made for the first time in a reply brief, this quandary is not uncommon. In *Smith v. Bray*, 681 F.3d 888, 902 (7th Cir. 2012), overruled on other grounds by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016), we explained that the issue can "arise in the summary judgment procedure when the moving party asserts in her reply brief that the opposing party is relying on inadmissible evidence." Since "the proponent of the evidence ordinarily need not make an argument in anticipation of an objection that may never be made[,]" a surreply brief would be, absent the rare oral argument, the non-moving party's only opportunity to respond to such objections. *Id.* at 902–03. But surreply briefs are rare and discouraged in most districts. See *id.* at 903. So in *Smith*, we permitted the non-moving party to raise arguments in support of the evidence for the first time on appeal. *Id.* We concluded that where "the appellant did not have a meaningful opportunity to be heard on the evidentiary issue in the district court, it would not be fair to refuse to consider his arguments presented for the first time on appeal." *Id.*

*Smith* is best understood as having followed the rule of *Costello* that a party need not seek leave of court to file a surreply just to preserve an issue for appeal. After all, *Smith* came to us from the Northern District of Illinois, where the local rules say nothing about surreply briefs. But this case is from the Southern District of Indiana, which expressly permits surreply briefs to be filed as of right in this situation—to respond to evidentiary objections made in a reply brief. *Id.* (citing S.D. Ind. L.R. 56-1(d)). So, unlike the non-movant in *Smith*, Ennin *did* have "a meaningful opportunity to be heard on the evidentiary issue in the district court." He just chose not to take advantage of it. That is the very essence of waiver.

This is true even though parties are not required to file sur-reply briefs. A party need not file a reply brief either, but that would not excuse him from his obligation to respond to an argument made in an opposition brief. For example, suppose that, rather than objecting to Ennin's evidence, CNH failed to file a reply brief (or did file a brief, but chose to ignore the evidence). We would not then permit CNH to raise its hearsay and authentication objections for the first time on appeal. Ennin is subject to the same standard. Where a brief is permitted as a matter of right, a party must file it or risk waiver of any arguments it has neglected to raise.

"In an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which decision will be based, the failure to reply to an adversary's point can have serious consequences." *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994). For Ennin, those consequences include forfeiting the use of evidence that he maintains might bolster some of his claims. By not presenting his arguments to the district court, he let CNH's objections to the evidence stand unopposed. The district court was not required to make Ennin's arguments for him, and we will not permit him to raise them for the first time on appeal. Therefore, we affirm the district court's decision to exclude the evidence.

### B. Summary Judgment Motion

Moving to the merits, the question on review from a grant of summary judgment is whether the undisputed facts in the record merit judgment in favor of CNH on Ennin's various claims. We review the district court's legal conclusions *de novo*. *Chicago Reg'l Council of Carpenters Pension Fund v. Schal Bovis, Inc.*, 826 F.3d 397, 402 (7th Cir. 2016).

We begin with the race and national origin discrimination claims. The ultimate question here "is simply whether the evidence would permit a reasonable factfinder to conclude that [Ennin's race or national origin] caused" CNH to terminate his employment. *Ortiz*, 834 F.3d at 765. Because CNH has proffered legitimate, nondiscriminatory reasons for firing Ennin, he must produce evidence that those reasons were actually pretext for discrimination. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). "[P]retext 'involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.'" *Burton v. Bd. of Regents*, 851 F.3d 690, 698 (7th Cir. 2017) (quoting *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015)).

Ennin has failed to point to any admissible evidence that CNH didn't fire him because of the November 17 incident with Chavez. The record does not even raise suspicion of racial discrimination. Although Ennin points to white employees whom he says were similarly situated to him and not fired, the district court correctly rejected the comparators because they were hourly employees and had not been previously disciplined. *Ennin v. CNH Indus. Am., LLC*, No. 1:15-cv-01359, 2017 WL 2225203, at *5 n.5 (S.D. Ind. May 22, 2017). The second reason is particularly salient, as we recently held that "[a]n employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016). Without any appropriate comparators or any other indicators of racial bias, Ennin is left with mere conjecture and speculation to support his race and national origin discrimi-

nation claims. That is not enough to survive summary judgment, so we affirm the district court's dismissal of these claims.

Ennin's disability discrimination, failure to accommodate under the Americans with Disabilities Act, FMLA retaliation, and FMLA interference claims fare no better. Because we have affirmed the district court's evidentiary ruling, the only admissible evidence establishes that CNH terminated Ennin's employment on November 19. That was before he became disabled[3] and before CNH knew that he had requested FMLA leave. That inconvenient timing (at least as far as Ennin's case is concerned) makes it impossible for CNH to have fired Ennin *because of* his disability or his decision to take FMLA leave. *Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015) (disability discrimination); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015) (FMLA retaliation). It also destroys his failure to accommodate claim, as he doesn't claim that he was disabled at all when he was fired. And Ennin's FMLA interference claim fails because he *received* the FMLA leave to which he was entitled. CNH didn't deny him any rights under that statute. See *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015) (to prevail on an FMLA interference claim, an employee must show that "[his] employer denied [him] FMLA benefits to which he was entitled.").

Finally, because we have concluded that Ennin's federal employment rights were not violated, his remaining claims

---

[3] Ennin argued below that he became disabled when he had the surgery. He never argued that his hemorrhoids rendered him disabled before that. It follows that he was not disabled on November 19.

necessarily fail. The conspiracy claims under 42 U.S.C. §§ 1985 & 1986 are derivative of the underlying claims, so without any substantive violations there can be no claim under these statutes. See *Indianapolis Minority Contrs. Ass'n v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) ("[T]he absence of any underlying violation of the plaintiffs' rights precludes the possibility of their succeeding on this [Section 1985(3)] conspiracy count."); *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986."). The state law negligent-supervision claim was also derivative because Ennin alleged that the breach of CNH's duty was related to the deprivation of federally protected rights. Without any deprivation of such rights, there is no viable claim for negligence. Therefore, the district court was correct to dismiss all these claims and grant summary judgment to CNH.

## III. Conclusion

Abdullah Ennin failed to present any admissible evidence to counter his employer's legitimate, nondiscriminatory reasons for firing him. He rendered inadmissible some evidence that might have been helpful to him by failing to defend its admissibility before the district court, so we are left with nothing but speculation to support his claims. Because that is not enough to survive summary judgment, we affirm the judgment of the district court.

AFFIRMED