In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2543

BRENDA LEAR SCHEIDLER,

*Plaintiff-Appellant,*

*v.*

STATE OF INDIANA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:14-cv-937-WTL-DML — **William T. Lawrence**, *Judge.*

ARGUED OCTOBER 24, 2018 — DECIDED JANUARY 25, 2019

Before BAUER, MANION, and BRENNAN, *Circuit Judges.*

MANION, *Circuit Judge.* Brenda Lear Scheidler worked for the Indiana Department of Insurance ("IDOI"). She sought accommodations for disabilities related to her mental health. She asked, among other things, that her coworkers not startle her. She received these accommodations for several years. But on May 28, 2013, a frustrated supervisor reached toward Scheidler and said, "I could just strangle you." An investigation into this workplace incident discovered that

several months earlier Scheidler commented in an elevator about a coworker's apparent promotion prospects: "It's who you know and who you blow."

IDOI terminated Scheidler. She sued it for disability discrimination, retaliation, and other claims. She lost some claims at summary judgment and she lost the rest at trial. She appeals summary judgment and an evidentiary decision. Finding no reversible error, we affirm.

## I. Facts

Scheidler[1] began working for Indiana in a prison in 1999. She learned an inmate wrote in his diary he wanted to torture her sexually. Scheidler reacted emotionally and left her employment and sought medical treatment for the trauma. In 2006, she began working at IDOI as a clerical assistant. She received good reviews, promotions, and no discipline until the termination at issue here.

In 2009, IDOI hired a recently released offender. This apparently scared Scheidler, and as a result she was diagnosed with depression, bipolar disorder, and post-traumatic stress disorder. She took FMLA leave. When she returned, she discussed her condition with her supervisor, Cindy Donovan, and asked her to comment on any changes in Scheidler's behavior. Scheidler also told other employees, including Annette Gunter and Ronda Ankney, about the diagnosis. Scheidler asked them not to startle her, be loud, or approach suddenly. She says she received these

---

[1] At all relevant times while working Lear was her surname. She later married and added her spouse's name. On appeal she refers to herself as "Scheidler," so we do, too.

accommodations and for several years did not have any further problems at work until May 28, 2013.

Gunter and Ankney are sisters-in-law. In 2010, Scheidler began carpooling with them. By 2013, Gunter supervised Scheidler for some purposes.

In 2013, Scheidler applied for a particular position within IDOI. Mary Ann Williams, another IDOI employee, also applied. As Scheidler, Gunter, and Ankney left work one day in March or April 2013, they noticed Williams was not at her station. According to Ankney, Scheidler said, "Oh, it looks like Mary Ann is still upstairs in her interview for her government job."

"Brenda, don't we all have government jobs? We're all State employees," Ankney responded.

"Well, I mean for her federal job upstairs … I'm sure she'll get it because … it's who you know and who you blow," Scheidler said in the elevator.[2] Ankney and Gunter told Scheidler they disapproved, but did not report this comment until several months later.

On May 28, 2013, Scheidler went to Gunter's office after getting an email from Donovan about redistribution of duties. Scheidler sought clarification. Gunter said she did not know any more than Scheidler did. After Scheidler left, Gunter went

---

[2] The briefs and record report different versions of this comment. But both Scheidler and Ankney testified Scheidler said, "It's who you know and who you blow."

to Ankney's cubicle and said, "I don't know what I'm going to do if I don't string her up by the end of the week."[3]

Overhearing the comment as she walked by, Scheidler asked, "Are you talking about me?" Gunter turned, stretched her arms out, leaned into Scheidler, made a choking motion, and said, "I could just strangle you." This startled Scheidler. A heated exchange ensued. Scheidler mentioned Gunter's medication. Gunter indicated Scheidler should quit. Gunter said she wanted to end the carpool. We refer to this encounter as the "cubicle episode." Scheidler told Donovan about it, but did not want a formal investigation. But Donovan notified HR Director Katie Dailey and the State Personnel Department ("SPD"). Jeffrey Hendrickson of SPD investigated. He interviewed Scheidler and others, including Gunter, and learned of the "blow" comment. He then met with IDOI Commissioner Stephen W. Robertson and conveyed the facts. Robertson made the disciplinary decisions. He decided to issue a written reprimand to Gunter for her inappropriate conduct during the cubicle episode. He decided to terminate Scheidler. IDOI terminated her on July 8, 2013. The reason for this termination is, of course, the heart of this case. Scheidler claims IDOI terminated her for unlawful reasons. But IDOI argues it terminated her because of her two instances of inappropriate conduct: her "blow" comment in the elevator and her participation in the cubicle episode.

---

[3] The briefs and record also report different versions of this statement. The differences are immaterial here. We present the version quoted by Gunter during her trial testimony.

## II. Procedural Posture

Scheidler filed twice with the E.E.O.C. She received notices of right to sue on both charges. She also pursued administrative relief under Indiana Code 4-15-2.2-24, 42. An ALJ found in her favor on her disability-based retaliation claim but found in IDOI's favor on her other claims. The State Employees' Appeals Commission affirmed, and remanded to set damages. But the parties agreed to stay those state proceedings pending resolution of the federal case.

Scheidler filed a complaint with the district court and amended it twice. The second amended complaint brought three counts against Indiana and IDOI Commissioner Stephen W. Robertson, in his official and personal capacities.

Count 1 ("Disability Discrimination") alleged Defendants discriminated against her because of her disability "by failure to accommodate, discrimination and retaliation," in violation of 42 U.S.C. §§ 1981a, 12112, and 12203; 29 U.S.C. § 794; related sections; and Indiana disability laws.

Count 2 ("Sex Discrimination") alleged Defendants discriminated against her because she is female, in violation of 42 U.S.C. §§ 1981a, 1983, 2000e-2, 2000e-5, and related sections.

Count 3 ("Retaliation") alleged Defendants discriminated against her "because she opposed and complained about discrimination and exercised her rights to free speech," in violation of 42 U.S.C. §§ 1981a, 1983, 2000e-3, 2000e-5, 12112, and 12203; 29 U.S.C. § 794; related sections; Indiana whistleblower laws; and the First Amendments of the United States and Indiana.

We share the court's observation that the second amended complaint does not clearly state what claims Scheidler asserts.[4] She abandoned some claims. Defendants moved for summary judgment on all remaining claims. She clarified in her brief responding to this motion that she pursued claims of disability discrimination, failure to accommodate, and retaliation for making complaints of sex and disability discrimination. The court construed her disability claims as arising under the ADA and the Rehabilitation Act and her retaliation claims as arising under those statutes and Title VII of the Civil Rights Act.

On grounds not raised by Defendants, the court granted summary judgment to Robertson on all claims.

The court denied summary judgment on the ADA and Rehabilitation Act claims against Indiana for disparate treatment due to disability. The court found enough evidence on the *prima facie* case and pretext to require trial.

The court granted summary judgment to Indiana on the claim for sex-based retaliation under Title VII. Scheidler argued her "blow" comment was a complaint of sex discrimination and claimed IDOI terminated her in response to this complaint. But the court determined she could not show she engaged in statutorily protected activity requisite for a retaliation claim because subjectively she did not have a

---

[4] For example, disability and sex discrimination cannot violate § 1983. *See Gillo v. Gary Cmty. Sch. Corp.*, No. 2:14-CV-99-JVB-JEM, 2016 WL 4592200, at *4 (N.D. Ind. Sept. 2, 2016) (collecting cases and noting § 1983 does not create substantive rights susceptible to violations). And we do not think "First Amendment" of Indiana's Constitution means what she thinks. But we do not hold these discrepancies against her.

sincere, good-faith belief she opposed an unlawful practice and because objectively her complaint did not involve discrimination prohibited by Title VII. Without a statutorily protected activity, this retaliation claim fell.

The court also granted summary judgment to Indiana on the disability-based retaliation claim. Scheidler claimed IDOI terminated her in retaliation for complaining of disability discrimination. But the court noted she did not clearly articulate what her complaint of disability discrimination was. The closest she came to articulating a complaint of disability discrimination, according to the court, was: "When [Scheidler] complained to human resources about Annette Gunter threatening her and making a strangling motion at [her], she told human resources that she suffered from bipolar disorder and PTSD and that is why the situation startled and upset her more than it might other people." But the court concluded she only raised her conditions to explain her reaction to Gunter, not to complain anyone discriminated because of disability. So the court determined she failed even to create an inference of statutorily protected activity.

Finally, the court granted summary judgment for Indiana on the failure-to-accommodate claim, concluding it was simply her disability-discrimination-disparate-treatment claim worded differently because the accommodation she sought that IDOI failed to give was treatment equal to Gunter.

So the only claims at trial were for disparate treatment due to disability discrimination against Indiana under the ADA and the Rehabilitation Act. The jury gave a defense verdict.

Scheidler appeals the order granting partial summary judgment and an evidentiary ruling during trial. We review

summary judgment *de novo*, and will affirm when—viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in its favor—there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Barbera v. Pearson Educ.*, 906 F.3d 621, 628 (7th Cir. 2018). We may affirm summary judgment for reasons not articulated by the district court so long as the record supports them, the district court adequately considered them, and the nonmovant had an opportunity to contest them. *Gerhartz v. Richert*, 779 F.3d 682, 685 (7th Cir. 2015).

A party generally forfeits issues and arguments raised for the first time on appeal. *CNH Indus. Am. v. Jones Lang LaSalle Am.*, 882 F.3d 692, 705 (7th Cir. 2018). A party also generally forfeits issues and arguments it fails to raise in its initial appellate brief. *Holman v. Indiana*, 211 F.3d 399, 406 (7th Cir. 2000). Insufficiently developed issues and arguments are also forfeited. *United States v. Austin*, 806 F.3d 425, 433 n.2 (7th Cir. 2015).

### III. Analysis

#### A. Redundant claims?

Scheidler first argues the court erred by concluding her failure-to-accommodate claim was the same as her disability-discrimination-disparate-treatment claim. The law recognizes the existence of separate claims. The ADA forbids certain types of disability discrimination: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). The ADA then defines "discriminate against a qualified individual on the basis of disability" to include disparate treatment *and* failure to accommodate: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee … ." 42 U.S.C. § 12112(b)(5)(A).

A claim for *disparate treatment* based on disability under the ADA (and the Rehabilitation Act, with immaterial nuances) requires proof (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the "but for" cause of adverse employment action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503–04 (7th Cir. 2017); *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016).

A claim for *failure to accommodate* under the ADA (and the Rehabilitation Act, generally) requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably. *E.E.O.C. v. AutoZone*, 809 F.3d 916, 919 (7th Cir. 2016); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). So two separate claims are possible under each statute.

But neither Scheidler's second amended complaint nor her statement of claims is clear regarding failure to accommodate. The closest Scheidler comes to advancing a failure-to-accommodate claim is under the theory that she asked her coworkers not to startle her, but Gunter threatened to strangle her. Yet Scheidler's own statement of claims tends to undermine even this theory, because there she admitted: "The

State accommodated [my] disability before [I] complained about discrimination in May 2013."

Scheidler's appellate brief is clearer. In the section arguing the court erred by conflating the failure-to-accommodate claim with the disparate-treatment claim, she asserts "the district court ignored the fact that Gunter failed to accommodate Scheidler on May 28, 2013 by raising her voice, making a strangling motion at Scheidler, and threatening her." (Appellant's Br., DE 20 at 26.) The brief does not mention any failure to accommodate unrelated to the cubicle episode.

In any event, even viewing the facts in the light most favorable to her and drawing all reasonable inferences for her, we conclude summary judgment against her on the failure-to-accommodate claim was appropriate. The cubicle episode was an isolated, "one-off" event. She does not allege a failure to accommodate apart from the cubicle episode. Indeed, she acknowledged there were no problems involving a failure to accommodate other than the cubicle episode.[5]

---

[5] In 2009, "Scheidler asked that her coworkers not startle her, not make any loud noises, and not approach her suddenly because the PTSD made her very jumpy. Scheidler continued to request those accommodations, and Donovan only told Scheidler once that 'something is a little different' about her behavior, which Scheidler corrected. There were no problems after that until [the cubicle episode in] May 2013 when Scheidler complained to Gunter and Donovan that Gunter told Scheidler that Gunter would like to strangle Scheidler, Gunter moved her hands toward Scheidler's throat, and Gunter told Scheidler that Scheidler should leave and get another job." (Appellant's Br., DE 20 at 6–7, internal citations omitted.) "Scheidler had previously requested accommodations of not being startled, not having loud noises made around her, and not being approached suddenly, due to her disability, and Donovan, as well as

"Reasonable accommodation under the ADA is a process, not a one-off event." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters.*, 834 F.3d 760, 764 (7th Cir. 2016). Here, Scheidler has adduced no evidence that the interactive process broke down. Even accepting as we do for present purposes that she is disabled, that she asked her employer for reasonable accommodations, and that Gunter breached the arrangement on one occasion by threatening to strangle Scheidler, we cannot escape the facts that Scheidler otherwise received all the treatment she requested regarding her disability, that she reported this singular cubicle episode to Donovan, and that no further problems occurred. IDOI addressed Gunter's misconduct by reprimanding her. That the reprimand did not benefit Scheidler because IDOI terminated her the same day is of no moment because IDOI was allowed to terminate her for her misconduct during the elevator episode plus her misconduct during the cubicle episode, even if her disability precipitated that misconduct.[6]

We do not hold a single event could never support a claim for failure to accommodate. We merely conclude on this

---

Gunter, Ankney, and … other coworkers, had granted those accommodations before this incident." (*Id.* at 10.)

[6] *Felix*, 828 F.3d at 568–69; *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001) ("[A]n employee can be terminated for violations … even if the … violations occurred under the influence of a disability."); *Palmer v. Circuit Court of Cook Cty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) ("There is no evidence [plaintiff] was fired because of her mental illness. She was fired because she threatened to kill another employee. The cause of the threat was … her mental illness … . But if an employer fires an employee because of … unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the [ADA].")

record the single cubicle episode does not support this claim. Any error in conflating the claim for failure to accommodate with the claim for disparate treatment was therefore harmless.

### B. Retaliation

Scheidler next argues the court erred in granting summary judgment on her retaliation claims.

### 1. Title VII retaliation

Title VII bans employers from retaliating against employees who exercise rights under it. Title VII protects "any … employees" who "opposed any practice" banned by the statute, or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e-3(a).

A retaliation claim requires statutorily protected activity, which generally involves subjective and objective factors: "The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." *Hamner v. St. Vincent Hosp. and Health Care Ctr.*, 224 F.3d 701, 707 (7th Cir. 2000), *overruled on other grounds by Hively v. Ivy Tech Cmty. Coll. Ind.*, 853 F.3d 339 (7th Cir. 2017).

Scheidler claims her elevator comment—"It's who you know and who you blow"—was statutorily protected activity. But the court held she failed both the subjective and objective factors because she did not have a sincere, good-faith belief she opposed an unlawful practice and because her comment did not involve discrimination prohibited by Title VII. The court noted she testified she did not think her comment was sexual. She told the ALJ she did not think "blow" had a sexual

connotation and she meant merely "[b]lowing hot air."[7] The court noted the possibility a comment could be interpreted to involve a sex act does not make it a complaint of sex discrimination. And the court noted she had not provided any evidence she rooted her comment in her gender.[8]

Scheidler argues the court erred because the IDOI considered the comment to be a complaint of *quid pro quo* sexual harassment, and an employer's mistaken belief that an employee engaged in protected activity sustains retaliation. For support, she cites *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418–19 (2016). But it is distinguishable. It involved a First Amendment claim, not a Title VII retaliation claim. Certainly we are open to persuasion by analogy, but she does not develop sufficient arguments for this, and we decline to make them for her. Also the cases are factually distinguishable. In *Heffernan*, defendant mistakenly thought plaintiff engaged in protected political speech, and punished him. But in our case, neither party thought the comment was

---

[7] "Blow" has various potential meanings. Another Lear famously hurls it without obvious sexual innuendo: "Blow winds … ! Rage, blow!" William Shakespeare, *King Lear*, Act III, sc. ii.

[8] Even later, at trial, Scheidler did not characterize "blow" as sexual: "I meant it's who you know; and when I say, 'It's who you blow,' you know you got somebody that you talk most up to, that knows you in your private life. Her husband … had been president of the Indiana Insurance Association. So she was and her husband was known … by the Commissioner." Scheidler did not testify she meant to accuse anyone of *quid pro quo* sexual harassment. She did not testify she meant anyone expected her, as a woman, to give sex to get ahead in her job. She did not explain her comment in relation to her gender. Instead, she testified she only meant to complain about favoritism because Williams and her husband knew the Commissioner. That complaint isn't protected here.

an actual complaint of sexual harassment or discrimination. That characterization apparently only arose late in litigation. Scheidler's reliance on *Thompson v. North American Stainless*, 562 U.S. 170, 173–79 (2011), is also misplaced. That case merely stands for the proposition that a person aggrieved by retaliation has standing to sue for it even if that person did not engage in the protected activity but someone else did. Neither of these cases requires the conclusion that the subjective component of the Title VII protected-activity inquiry is obviated if the employer mistakenly thinks the employee engaged in statutorily protected activity.

Besides, she offers no evidence that her complaint satisfies the objective factor. She offers no evidence—and does not even claim—that the Commissioner (or anyone else with IDOI) asked for or received a sex act from Mary Ann Williams (or anyone else) in exchange for a promotion or any other employment benefit. She offers no evidence that her elevator comment concerned actual discrimination prohibited by Title VII. So the court did not err in granting summary judgment on the Title VII retaliation claim.

*2. Disability-based retaliation*

Surviving summary judgment on disability-based retaliation requires showing (1) statutorily protected activity; (2) adverse employment action; and (3) causal connection. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). The court granted summary judgment against this claim because Scheidler failed to show statutorily protected activity. She argues the court ignored several protected activities.

First, she argues the court ignored her complaint about disability discrimination *to Gunter* during the cubicle episode.

There, Scheidler explained that when Gunter (who did not have a disability) was upset and took Xanax, she was allowed to move out of her position. But when Scheidler (who has a disability) was upset, she was not given the same opportunity. Scheidler cites her testimony before the ALJ. But there are numerous problems with this argument. Foremost among them is forfeiture. In the cited testimony, she never says she complained to Gunter about disability discrimination. Scheidler does not say, for example, that she complained that Gunter received better treatment than Scheidler *because* Scheidler is disabled and Gunter is not. Indiana argues for forfeiture of this argument for failure to raise it below. In reply, Scheidler claims she did raise this argument below, but she only cites a broader portion of her testimony before the ALJ and two pages from her response to the motion for summary judgment below. Again, nowhere in the cited materials does she say she complained to Gunter about disability discrimination. So Scheidler forfeited this argument. And the record does not support it anyway.

Second, she argues the court ignored the fact that when she complained *to HR* about Gunter's conduct during the cubicle episode, Scheidler told HR she suffered from bipolar disorder and PTSD and that is why the situation startled and upset her particularly. Scheidler argues her statement to HR *was itself a complaint* that Gunter failed to accommodate Scheidler as requested. Here, she only cites her testimony before the ALJ. But the cited testimony does not support her argument. Moreover, in neither her initial appellate brief nor her reply does she point to a time when she raised this specific argument to the district court. The mere fact that Scheidler argued below that Gunter and others failed to accommodate her disability misses the point. Such an argument is not

tantamount to an argument that Scheidler complained to HR that Gunter failed to accommodate *and then* IDOI retaliated against Scheidler for making that complaint. So she forfeited this argument. Also, the record does not support it. Therefore we need not address the other problems with it.

Third, she argues the court ignored the fact that her statement *to HR* that her disabilities explained her reaction to Gunter *was itself a request for an accommodation* regarding Scheidler's reaction. Here, she only cites the order granting summary judgment. Indiana argues for forfeiture for failure to develop. We agree. We also note her response to the motion for summary judgment did not adequately develop this argument. And the record does not support it anyway.

Her remaining arguments regarding disability-based retaliation are unavailing. The court committed no reversible error in granting summary judgment on this claim.

## C. Commissioner

Scheidler brought claims against Indiana and IDOI Commissioner Stephen W. Robertson, in both his official and personal capacities. The court granted full summary judgment to Robertson on grounds not raised by Defendants, without notice or a reasonable response time, in violation of Rule 56(f)(2). Appellees admit this was an error. But the error was harmless. Independent of the Robertson irregularity, Scheidler lost all her claims at summary judgment or trial anyway. She offers no satisfactory explanation of how the premature summary judgment for Robertson ultimately prejudiced her. Finding no reversible error regarding summary judgment, we turn to the trial.

*D. Exclusion of Thomas evidence*

Donna Thomas was an IDOI employee terminated in December 2011 after saying a racial slur. HR Director Dailey discussed Thomas at Scheidler's ALJ hearing. In moving for summary judgment, Defendants referenced this testimony. Defendants asserted they terminated Thomas for her single slur. Scheidler challenged this at summary judgment. She said Thomas committed multiple infractions before the slur, Defendants gave her progressive discipline rather than immediate termination, and they did not terminate her for a single slur.

At trial, after the direct examination of Scheidler, her attorney asked to be allowed to introduce four documents from Thomas's personnel file to show IDOI treated a comparable person better than Scheidler. The court denied the admissibility of these documents, but expressly allowed the possibility Scheidler could introduce them through other witnesses. But she failed to pursue this opening. She called no further witnesses and she did not seek admission of the documents through any Indiana witness.

Therefore Scheidler forfeited this evidentiary issue by forgoing the court's invitation to seek admission of the exhibits later. *See Ennin v. CNH Indus. Am.*, 878 F.3d 590, 596 (7th Cir. 2017) (concluding it is "the very essence of waiver" to choose not to present evidence when given the opportunity). Anyway, the standard of review is abuse of discretion, *Haynes v. Ind. Univ.*, 902 F.3d 724, 730 (7th Cir. 2018), and the court did not abuse its discretion.

Besides, Scheidler has not offered sufficient reasons to convince us admission would have changed the outcome.

## IV. Conclusion

We considered all Scheidler's arguments and found none availing. Finding no reversible error, we AFFIRM.